## Wabash Railroad Company v. George W. Campbell, et al.

1. DECLARATION—*when not error to permit amendment of, after verdict.* Held in this case that it was not error for the court to permit the plaintiffs to amend their declaration by the filing of additional counts after a motion in arrest had been interposed, inasmuch as no question of variance had been raised during the trial and such additional counts merely amplified the averments of the original declaration.

2. MEASURE OF DAMAGES—*in action against carrier for injury to cattle.* In such case the proper measure of damages is the difference between the market value of the cattle had they been delivered pursuant to the obligation of the carrier and their market value when delivered contrary to such obligation.

3. JUDICIAL NOTICE—*of what taken.* The court in this case judicially noticed the requirements of the quarantine laws.

Action on the case for injury to personal property. Appeal from the Circuit Court of Shelby County; the Hon. SAMUEL L. DWIGHT,, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed January 6, 1905.

C. N. TRAVOUS, for appellant.

R. M. PEADRO, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case by appellees against appellant. The declaration alleges, in substance, that the defendant was the owner of and operating a railroad between

East St. Louis and Sullivan, Illinois; that on October 10, 1902, the defendant received of the plaintiffs at East St. Louis, 200 head of cattle, in good condition, to be safely carried to Sullivan, for reward; that by reason thereof it became bound to furnish and load such cattle in proper cars, free from disease or other infection, and carefully to convey them to said destination; that defendant failed to regard said duty, but negligently marked, carded and billed said cars as containing "Southern Cattle," meaning thereby that the cattle shipped therein were infected or diseased cattle, by means whereof the said cattle became unsalable and greatly depreciated in value, and could not be sold, so that the plaintiffs were obliged to and did lay out the sum of $1,300 in endeavoring to sell said cattle, and incurred expenses in the necessary support and maintenance of the same for the period of four months while prevented from selling them, amounting to the sum of $1,500.

A trial was had resulting in a verdict for the plaintiffs for $760.50. A motion for a new trial was made by the defendant, and overruled. The defendant then moved in arrest of judgment. Pending the disposition of such motion, the plaintiffs asked and were granted leave to file amended counts to their declaration. The matter alleged in such counts was, in substance, that the cards containing the words "Southern Cattle" were in general and exclusive use for the purpose of giving notice that the cars on which they were fastened were infected, and liable to spread disease, or that the cattle in them were infected or "Southern Cattle," and as such liable to communicate the disease generally called "Texas fever" to all cattle with which they might come in contact, and that said cars were thus rendered unsuitable for the transportation of said cattle; of all of which the defendant had due knowledge.

The defendant then filed a motion supported by a proper affidavit, to have the verdict set aside and the cause continued, alleging as grounds therefor, that, in consequence of the new issues presented by the additional counts, the defendant was surprised and unprepared to meet and try

the same at that term of court. The motion was denied, as was also the motion in arrest of the judgment. Whereupon the defendant appealed to this court.

Both motions were properly overruled. The matter in the additional counts but amplified the averments of the original declaration as to the uses and purposes to which the cards in question were generally devoted, and presented no new issues. Furthermore, no question of variance was specifically raised during the trial.

The material facts involved are substantially as follows: On October 27, 1902, appellees shipped from East St. Louis, over appellant's road, 120 head of cattle, contained in four cars, and consigned to one J. C. Beam, appellees' agent at Sullivan, Illinois, to be by him there sold. At the time of such shipment there were in force certain rules and regulations, promulgated by the Department of Agriculture of the United States, for the purpose of regulating and controlling the shipment from within the limits of a certain quarantine district thereby established, of cattle originating within such district. Such cattle were commonly known as and called "Southern Cattle," and were generally infested with what are called "cattle tick," by reason of which native cattle coming in contact with them, were liable to contract splenetic or Texas fever. It was provided by said regulations that no cattle should be transported from the quarantine district therein established and otherwise known as the "scheduled district," except upon condition that they should be placed in pens or yards set apart for infected cattle, to which no other cattle should be admitted; that all cars used for the transportation of the same should be cleansed and disinfected as soon as possible after unloading, and before they were again used to transport animals; that all cars carrying cattle from the "scheduled district" should bear on both sides thereof, printed placards, to be affixed by the carrier, stating that they contained Southern cattle, and further, that each of the waybills accompanying the shipments should have plainly written or stamped upon its face a similar statement.

Through the negligence of the servants of appellant, cards
of this description were attached to the cars containing
appellees' cattle, although the same were not Southern
cattle and did not come from the scheduled district. The
evidence tends to show that upon the arrival of the cattle
at Sullivan, the presence of the cards prevented their sale
at the market price, by creating a suspicion or impression
among possible purchasers that they had been shipped
from the scheduled district and for that reason were likely
to have and communicate to other cattle the splenetic or
Texas fever.

There is no serious conflict as to the foregoing facts,
from which the jury was, we think, clearly warranted in
finding that appellant was guilty of the negligence charged
in the declaration. The controverted issues seem to be, to
what extent, if any, were appellees damaged thereby, and
as to what is the proper measure of damages. Appellant
insists that any damages sustained by appellees were occa-
sioned by their failure to comply with the well-settled rule
of law which makes it the duty of one who is injured by
the breach of contract or tort of another, to make reason-
able efforts to render the injury as light as possible, and
to protect himself from unnecessary injury, and that, if he
fails to do so, he cannot recover damages occasioned by
such neglect. Hartford Deposit Co. v. Calkins, 186 Ill. 104.

While the cattle were in transit, Perry, the agent of
appellees, who was in charge of them, learned of the pres-
ence of the cards upon the cars. It is insisted that it be-
came his duty either to have removed them himself, or
requested the trainmen to remove them, or to have ob-
tained authority from appellant's agent at St. Louis to do
so. It is also urged that after the cattle reached Sullivan,
it became the duty of Perry and Bean to explain to pros-
pective buyers, that the cards were upon the cars through
error, and by the use of letters and telegrams to remove,
as far as possible, any doubt as to the character and con-
dition of the cattle; and that the failure of appellees' said
agents to take any or either of the steps suggested, occa-
sioned any damage suffered by them.

We are satisfied that the jury would not have been war-
ranted in finding that it was the duty of Perry to have re-
moved the cards.    They were presumably posted by appel-
lant under directions of the National Government.    An
unauthorized interference with the same by Perry would
have been a trespass, and possibly have subjected him to
a penalty.    Furthermore, although he was, as he testifies,
fully aware that the cattle were not Southern cattle; for
aught he knew the cars themselves might have been re-
cently used for carrying cattle from the quarantined dis-
trict and not thereafter disinfected.

" The rule which requires reasonable conduct on the
part of one whose legal rights have been violated, should
not be invoked by a defendant as a basis for a crit-
ical examination of the conduct of the injured party, or
merely for the purpose of showing that the injured person
might have taken steps which were wiser or more ad-
vantageous to the defendant.    Reasonably prudent action
only is required; not that action which the defendant, upon
afterthought, may be able to show would have been more
advantageous to him."    Sutherland on Damages, section
155.

Whether the other efforts suggested were reasonable
under the circumstances, to what extent they would have
availed if made, and whether the failure to make them con-
stituted negligence or occasioned or enhanced the damages,
and to what extent, as well as the amount to be awarded
as damages, were all questions of fact for the determina-
tion of the jury from the evidence, under the instructions
of the court.

The rule of law invoked was not brought to the atten-
tion of the jury by any proper instruction offered in
behalf of appellant, nor was any evidence adduced by it
tending to show that any particular efforts would, if made,
have availed, in whole or in part, to remove the suspicion
attached to the cattle.    The means to that end, suggested
by counsel in argument, were equally open to appellant;
yet, notwithstanding its live stock agent at St. Louis re-

ceived notice of the presence of the cards upon the cars and damage likely to be inflicted upon appellees, on the day following the arrival of the cattle at Sullivan, nothing whatever was done by him or the servants of appellant to prevent or lessen the same. In this state of the record, appellant is not in a position to complain that it did not receive the benefit of such rule.

The evidence tends to show further that when the cattle arrived at Sullivan they were in good condition, free from infection, and weighed about 1,000 pounds each.

At the request of the plaintiffs, the court instructed the jury that the measure of damages was the difference between the market value of the cattle had they been delivered in ordinary cars and their market value when delivered, as they were, in the placarded cars. Appellant offered no instructions or evidence upon the question, in the trial court, but now insists in this court, that the damages, if any, should be limited to the cost of preventing or removing the injurious effect of the cards, and of maintaining the cattle until such purpose was accomplished.

We are of opinion that the rule laid down by the court correctly stated the measure of damages in this and similar cases. Ry. Co. v. Patton, 203 Ill. 376.

Appellant introduced evidence showing that the market value of the cattle at Sullivan on the day of their arrival there, had they been delivered in ordinary cars, would have been at least $4.25 per hundred, and that when burdened, as they were, with the suspicion created by the use of the cards in question, but $2.50 per hundred. It will be readily seen that the evidence would have warranted a much larger verdict than that returned.

It is urged that the second, third and fourth instructions given at the request of appellees are erroneous, in that they omit all reference to the question of the alleged negligence of appellees' agent in failing to prevent or remove the injurious effect of the cards. The objection is not well founded. Neither the second or third instructions pertains to the question of damages. They relate solely to the

question of the establishment of the negligence complained of in the declaration. The fourth instruction does not direct either a verdict or finding. It purports to state the measure of damages only, and is not subject to the objection interposed. If appellant had desired to present to the jury the question of the effect of any negligence of appellees upon the damages, it was the duty and privilege of counsel to offer instructions embodying such theory.

Appellant's seventh instruction was properly refused. It invades the province of the jury, by telling them, in effect, that the failure of Perry to remove the cards from the cars was negligence.

The objections urged that certain testimony offered by appellant should have been, and was not admitted, we regard as so palpably groundless that we will not recite or discuss them in detail. It is contended that the court erred in admitting the testimony of witnesses as to the requirements of the quarantine laws. We have taken judicial notice of the same, as counsel admits we may properly do, and find that, in so far as they are material to the issues involved, such requirements are substantially as stated by the witnesses.

There being no reversible error in the record the judgment will be affirmed.

*Affirmed.*